IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**TIMOTHY MOORE,**

    **Plaintiff,**

v.

**RORY FELDMAN,**

    **Defendant.**

Case No. 2:16-cv-00200
CHIEF JUDGE EDMUND A. SARGUS JR.
Magistrate Judge Kimberly A. Jolson

## ORDER AND OPINION

This matter is before the Court on Plaintiff's Motion to Dismiss Defendant's Abuse of Process Counterclaim. (ECF No. 7.) For the reasons that follow, the Plaintiff's Motion is **GRANTED**.

### I. Background

Plaintiff Dr. Timothy Moore ("Dr. Moore") brings this action against Defendant Rory Feldman ("Mr. Feldman") for fraud and violations of the Ohio Consumer Sales Practices Act. (Complaint ("Compl.") ¶ 1, ECF No. 1.) Dr. Moore is a dentist in Columbus, Ohio and is also a magician, magic historian, and a collector of magical artifacts. (Compl. ¶ 6.) Mr. Feldman lives in Brooklyn, New York and is a collector and historian of magical artifacts relating to late-nineteenth and early-twentieth century magician Howard Thurston. (Defendant's Counterclaim ("Counterclaim") ¶ 1, ECF No. 4.)

For purposes of this motion only, the Court accepts the following allegations. From April 2011 to early 2015, Dr. Moore purchased a variety of magical artifacts from Mr. Feldman. (Compl. ¶ 11.) All of the items bought and sold during this period were purportedly from the

collection of Donald Raymond Hinz, a well-known collector of rare magical artifacts. (*Id.* ¶ 12.) Throughout the parties' transaction history, which included the sale of roughly 490 artifacts, Mr. Feldman warranted that the items sold were authentic pieces from Mr. Hinz's collection and provided certificates of provenance for nearly all the items. (*Id.* ¶¶ 19–20.) Dr. Moore estimates the value of the items he purchased to exceed $700,000.00. (*Id.* ¶ 24.) Dr. Moore subsequently resold many of the items to various well-known collectors, including David Copperfield. (Counterclaim ¶ 6.) In April 2015, Mr. Copperfield allegedly voiced concerns over the authenticity of the artifacts he purchased from Dr. Moore. (Compl. ¶ 28–29.) Dr. Moore alleges that when he confronted Mr. Feldman about these concerns, Mr. Feldman admitted that the artifacts were not authentic pieces from the Hinz collection. (*Id.* ¶ 30.)

Mr. Feldman claims that he offered Dr. Moore a full refund for all artifacts whose authenticity was in question, provided that Dr. Moore return the items and use the money to refund the collectors to whom he sold the artifacts. (Defendant's Answer ("Answer") ¶ 31, ECF No. 4.) Instead of accepting this offer, he argues, Dr. Moore refused the refund and attempted to extort Mr. Feldman by exploiting the situation for a profit. (Answer ¶ 30.) Specifically, Mr. Feldman alleges that he paid Dr. Moore $100,000.00 in order to refund David Copperfield for the artifacts Dr. Moore had sold him from Mr. Feldman's collection. (*Id.*) Dr. Moore supposedly misrepresented the amount that Mr. Copperfield actually paid for the items, which was only $60,000.00, and kept the remainder. (Counterclaim ¶ 12.) Mr. Feldman further alleges that Dr. Moore threatened him with criminal prosecution if he did not give in to his monetary demands. (*Id.* ¶ 17.)

Dr. Moore commenced this action on March 4, 2016 on the basis of diversity jurisdiction alleging claims for fraudulent misrepresentation and violations of the Ohio Consumer Sales

2

Practices Act. (Compl. ¶¶ 3, 36, 44.) As a result of Mr. Feldman's misrepresentations regarding the authenticity of the items he sold to Dr. Moore, Dr. Moore seeks nearly $1,000,000 in damages, treble damages, non-economic damages, costs and fees, and pre- and post-judgment interest. (*Id.* ¶¶ 40, 48.)

In addition to his Answer, Mr. Feldman asserted the instant Counterclaim against Dr. Moore for abuse of process, claiming that Dr. Moore is using his lawsuit to further a "perverted, illegitimate, and ulterior objective of continuing and heightening his ongoing smear campaign against Mr. Feldman, in order to try to implicate him in criminal misconduct and, ultimately, gain control of Mr. Feldman's Thurston collection, destroy its value, and/or publicly vilify him." (Counterclaim ¶¶ 25, 29.) Mr. Feldman claims that he is still willing to agree "to a no-questions-asked 100% refund of all items purchased by Dr. Moore," but that Dr. Moore refuses. (*Id.* ¶ 18–19.) He claims that Dr. Moore refuses his offer "because he prefers to manipulate and extort Mr. Feldman further." (*Id.* ¶ 28.) This matter is now before the Court on Dr. Moore's motion to dismiss Mr. Feldman's abuse of process counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should not be granted if the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a)(2), which requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." 5A Wright & Miller, Federal Practice and Procedure § 1356 (1990). However, for a pleading to be adequate, it must offer more than simple "labels and conclusions, and a formulaic recitation of

3

a cause of action's elements." *Twombly*, 550 U.S. at 545.

A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663. Further, a complaint is insufficient if it only offers assertions without any "further factual enhancements[s]" to support the claim. *Id.* at 557. When considering the plausibility of the complaint, the court must presume all factual allegations in the complaint to be true, and the complaint must be viewed through a lens most favorable to the non-moving party. *Martin v. Insight Communications Company*, No. 2:10-cv-00537, 2011 WL 1233401, at *4 (S.D. Ohio Jan. 26, 2011) (citing *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008)). This however, does not mean that the court must "accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

### III. Analysis

To establish a claim for abuse of process under Ohio law, the claimant must sufficiently plead that (1) a legal proceeding has been commenced in proper form and with probable cause; (2) the proceeding has been perverted to attempt to accomplish an ulterior motive for which it was not designed; and (3) direct damage has resulted from the wrongful use of process. *Hahn v. Star Bank*, 190 F.3d 708, 718 (6th Cir. 1999) (quoting *Yaklevich v. Kemp, Schaeffer, & Rowe Co.*, 626 N.E.2d 115, 116 (Ohio 1994)).

Dr. Moore argues that the abuse of process counterclaim should be dismissed because (1) Mr. Feldman has failed to explicitly plead that the underlying action was commenced in proper form with probable cause, and (2) because he has not alleged any "further act" beyond the mere filing of the lawsuit as required under the second element. Dr. Moore contends that he is

not required to affirmatively plead the first element nor does the law explicitly require a further act; alternatively, he argues that he has sufficiently pled each element.

1. Proper Form with Probable Cause

In analyzing a claim for abuse of process, it is helpful to distinguish abuse of process from a claim for malicious prosecution. Abuse of process is designed to remedy the misuse or exploitation of the legal process after a party has properly initiated a lawsuit with probable cause. *Hershey v. Edelman*, 932 N.E.2d 386, 411 (Ohio Ct. App. 2010). Malicious prosecution, on the other hand, attempts to remedy the harm from a plaintiff who initiates a suit improperly and without probable cause. *Id.* Accordingly, while "abuse of process does not lie for the wrongful bringing of an action," malicious prosecution "will generally lie where a lawsuit is begun in malice, without probable cause to believe it can succeed, and which finally ends in failure." *Clermont Environmental Reclamation Co. v. Hancock*, 474 N.E.2d 357, 361 (Ohio Ct. App. 1984); *see also Gliatta v. Tectum, Inc.*, 211 F.Supp.2d 992, 1010 (S.D. Ohio 2002). Thus, "a plaintiff who brings a malicious civil prosecution suit must show that the previous litigation terminated in his or her favor" before a determination can be made that it lacked probable cause. *Yaklevich*, 626 N.E.2d at 119 n.4.

Dr. Moore argues that Mr. Feldman fails to plead the first element of abuse of process and that in fact he "explicitly pleads the opposite" by claiming that "Dr. Moore has commenced and maintains this lawsuit for the perverted, illegitimate and ulterior objective of continuing and heightening his ongoing smear campaign against Mr. Feldman." (Counterclaim ¶ 29, ECF No. 4.) In other words, by disclaiming the merits of Dr. Moore's suit, Mr. Feldman essentially alleges that it lacks probable cause.

Mr. Feldman responds that it is not an affirmative pleading requirement to concede the

5

merits of the plaintiff's claim in order to properly state a claim for abuse of process, though he cites no authority for this proposition. Instead, he argues that in *Williams v. New Day Farms, LLC*, 2011 WL 1256059, at *2 (S.D. Ohio Mar. 31, 2011), the plaintiff did not specifically use the term "probable cause," but the Court nevertheless found upon a motion for summary judgment that a reasonable jury could conclude that probable cause existed for the initial suit based on defendants own representations. However, the Court also found that the plaintiffs had "sufficiently alleged, and provided evidence in support of their contention, that the defendants instituted a lawsuit that was lawfully served upon plaintiffs, in an attempt to use the court to do something the court could not otherwise do." *Id.* at *7.

This argument is contrary to several cases in which courts have explicitly required the first element to be alleged, or at least not denied. In a case before this Court, the Court dismissed the plaintiff's abuse of process claim, stating that "Plaintiff makes no allegation that Tectum's counterclaim is brought with probable cause but that Tectum somehow perverted the process by attempting to intimidate her into settlement." *Gliatta v. Tectum, Inc.*, 211 F. Supp. 2d 992, 1011 (S.D. Ohio 2002). In an Ohio case, the appellants had specifically alleged that the initiation of the initial complaint was "without probable cause" and therefore had failed to sufficiently plead the first element. *Gunaris v. Holiday Lakes Prop. Owners Ass'n, Inc.*, No. H-98-032, 1999 WL 63660, at *4 (Ohio Ct. App. Feb. 12, 1999).

Here, Mr. Feldman concedes that he has not used the "magic words" in his counterclaim and, again, argues that he is not required to affirmatively plead the first element. (Plaintiff's Motion to Dismiss Counterclaim ("Pl. Mot. to Dismiss") at 3–4, ECF No. 7.) The closest Mr. Feldman comes to alleging the first element is stating that "Dr. Moore has ostensibly commenced this lawsuit for the purpose of recouping his alleged damages from the purchase of

6

certain magic-related artifacts from Mr. Feldman." (Counterclaim ¶ 26.) However, at the same time, he also claims that Dr. Moore is "*falsely asserting* a claim for $1 million in economic losses and [is] also asserting a *frivolous* claim for consumer fraud under the Consumer Sales Practices Act . . ." (*Id.* ¶ 15 (emphasis added).) The term "frivolous" is defined as "lacking a legal basis or legal merit." (Frivolous, Black's Law Dictionary (10th ed. 2014).) In essence, these statements amount to an allegation that Dr. Moore lacked probable cause to commence his suit. An allegation of lack of probable requires the termination of the suit in defendant's favor before such a claim can be resolved, thus making this claim premature.

Mr. Feldman further argues that the Court may infer the first element because he acknowledges the existence of a bona fide dispute between the parties regarding the sale of magic-related artifacts and because he has not filed any motions challenging the sufficiency of the complaint under Rule 12. (Defendant's Response Opposing Pl. Mot. to Dismiss ("Def. Response") at 9–10, ECF No. 13.) Regardless of the Court's ability to infer such conclusion, the Court finds that Mr. Feldman has failed to sufficiently plead the first element that Dr. Moore's suit was brought in proper form and with probable cause.

2. Further Act

Regardless of whether Mr. Feldman has sufficiently pleaded the first element, his abuse of process claim also fails on the second element. The second element requires "that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed." (Plaintiff's Reply in Support of Pl. Mot. to Dismiss ("Pl. Reply") at 8, ECF No. 14 (quoting *Yaklevich*, 626 N.E.2d at 118).) Because abuse of process contemplates an already-initiated process, courts read this element to require that there be a "further act" not authorized "in the regular conduct of the proceeding." *Clermont*, 474 N.E.2d at 361. It follows that "if one

7

uses process properly, but with a malicious motive, there is no abuse of process." *Gliatta*, 211 F. Supp. 2d at 1010 (citing *Clermont*, 474 N.E.2d at 361).

In his counterclaim, Mr. Feldman does not allege that Dr. Moore has abused the court process through some "further act." He simply alleges that Dr. Moore has ulterior motives in filing the claim, which he "maintains . . . for the perverted, illegitimate, and ulterior objective of continuing and heightening his ongoing smear campaign against Mr. Feldman . . ." (Counterclaim ¶ 29.) Instead, he argues that abuse of process does not necessarily require a "further act" under Ohio law. (Def. Response at 14–15.) His assertion is rooted in the Ohio Supreme Court's decision to allow abuse of process as a permissive counterclaim. (*Id.* at 14 (citing *Yaklevich v. Kemp, Schaeffer, & Rowe Co.*, 626 N.E.2d 115, 119 (Ohio 1994)).) Mr. Feldman argues that the court could not have intended to require some further act because "if that were Ohio law, then a counterclaim would never be viable, except perhaps in an exceedingly narrow slice of cases in which a plaintiff does a 'further act' to pervert the legal proceeding *after* serving the summons but *before* the defendant files his or her answer." (Def. Response at 15.) Thus, he implies, scenarios must exist where the filing of the claim itself, and no further action, can constitute abuse of process. (*Id.* at 14–15.) Defendant's argument is not well taken.

In *Yaklevich*, the court explained that abuse of process need only be a permissive counterclaim, and not a compulsory one, because "[i]n a typical case, the abuse of process does not '*arise out of* the transaction or occurrence that is the subject matter of the underlying claim' but instead arises from events that occur during the course of the underlying litigation." *Id.* at 119 (emphasis in original). In other words, requiring a party to plead abuse of process in the answer would not usually be appropriate because the claim does not usually develop in the original suit. *Id.* In *Yaklevich* for instance, the defendant had previously sued Yaklevich, but that

8

suit was dismissed in Yaklevich's favor. Yaklevich subsequently filed an action against the defendant for abuse of process in bringing the earlier action. The court determined that Yaklevich was not required to bring his claim for abuse of process as a compulsory counterclaim in the earlier suit since the claim had not yet fully developed.

Those cases in which a claim for abuse of process are properly brought as a counterclaim often involved the filing of a second lawsuit in order to improperly gain leverage in an earlier suit. *See, e.g., Penn LLC v. Prosper Business Development Corporation*, No. 2:10–cv–0993, 2013 WL 4479142, at *6 (S.D. Ohio Aug. 19, 2013). In *Penn*, for example, the plaintiff threatened to commence another lawsuit unless the first litigation was settled "on terms favorable to [Plaintiff]." *Penn*, 2013 WL 4479142, at *6. When the parties did not settle that action, the plaintiff followed through with the threat and filed another lawsuit. *Id*. This illustrates the difference between a party who brings suit in an attempt to improperly gain leverage in a collateral action and one where a party properly uses process to extract a settlement in the underlying litigation. *Id*.

This case differs from the situation in *Penn*. Here, there is no evidence, nor does Mr. Feldman allege, that Dr. Moore is using his lawsuit to collaterally influence another proceeding. Rather, Dr. Moore's claims of fraud and violation of the Ohio Consumer Sales Practices Act are properly before this Court, seeking relief that this Court is empowered to grant. While Mr. Feldman alleges that Dr. Moore has hidden motives in bringing his claim, he has not alleged that Dr. Moore took any steps to further these motives through the improper use of process. (Counterclaim ¶ 4.) Nor does the counterclaim allege that Dr. Moore has committed a further act between the filing of the suit and response. Mr. Feldman only alleges that Dr. Moore wishes to further his smear campaign against him, obtain his Thurston collection, and potentially implicate

him with criminal misconduct. (Counterclaim ¶ 29, ECF No. 13 at 15) However, Mr. Feldman's counterclaim does not allege that Dr. Moore has taken any actual action between the filing of the suit and the counterclaim to further these alleged goals.

Despite his argument that it he is not required to allege a "further act," Mr. Feldman alternatively argues that he has indeed alleged that Dr. Moore engaged in further acts amounting to an abuse of process. In his response opposing the motion to dismiss, he suggests that Dr. Moore engaged in a "further act" when he "tacked on a wholly frivolous [Consumer Sales Practices Act] claim" to his lawsuit. (Def. Response at 15.) This argument is not well taken. "Tacking on" a claim is the same as filing a claim. If some further act is required beyond the initial filing, then filing the claim cannot both be the initial process and the further act. Having failed to identify some "further act" taken by Dr. Moore in an attempt to distort this action, Mr. Feldman's claim for abuse of process fails to state a claim upon which relief may be granted.

Thus, this court finds that Mr. Feldman has failed to sufficiently plead a claim for abuse of process claim because he has failed to sufficiently allege that Dr. Moore's suit was properly instituted with probable cause and because he has not alleged any "further act" taken by Dr. Moore to pervert the properly initiated process.

## IV. Conclusion

For the reasons set forth above, Plaintiff's Motion to Dismiss Defendant's Abuse of Process Counterclaim (ECF No. 7) is **GRANTED** and the counterclaim (ECF No. 4) is **DISMISSED**.

IT IS SO ORDERED.

\_\_3-20-2017\_\_  
DATE

EDMUND A. SARGUS, JR.  
CHIEF UNITED STATES DISTRICT JUDGE